United States Bankruptcy Court
Eastern District of Michigan
Southern Division

In re:
Cecil Rice,                                    Case No. 11-46953-R
          Debtor.                    Chapter 7
_____/

Opinion Sustaining Trustee's Objection to
<u>Debtor's Amended Claim of Exemptions</u>

The debtor, Cecil Rice, filed for chapter 7 protection on March 15, 2011. On May 5, 2011, the debtor filed an amended Schedule C, claiming an exemption for a cashier's check for retirement funds in the amount of $95,000 and for garnished retirement funds in the amount of $18,807.08. Both exemptions were pursuant to § 522(d)(12). The trustee filed an objection to the debtor's amended claim of exemptions. For the reasons stated herein, the trustee's objection is sustained.

I.

On October 2, 2009, Flagstar Bank obtained a judgment against Rice in the amount of $1,120,194.26. Flagstar began collection proceedings, including garnishing Rice's accounts at Comerica and Michigan First Credit Union.

On November 15, 2010, Rice received $107,552.35 in retroactive retirement benefits from the State of Michigan by direct deposit into his Comerica account. The following day, Rice withdrew $100,000 from the account and purchased a cashier's check made payable to himself.

On February 15, 2011, one month before Rice filed his bankruptcy petition, Flagstar conducted a creditor's examination of Rice. At the exam, Rice disclosed that he had a $100,000 cashier's check in a safe deposit box at Comerica, but he had removed it from the safe deposit box that day.

At some point after the creditor's exam, Rice negotiated the $100,000 cashier's check. He deposited $5,000 into his Comerica account and purchased another cashier's check for $95,000. That cashier's check was in Rice's possession when he filed his bankruptcy petition.

Rice filed his chapter 7 petition on March 15, 2011. He filed his schedules on March 30, 2011. Rice did not disclose the cashier's check on his schedules. He also did not disclose the $18,807.08 that Flagstar had garnished from his bank account but returned to him after he advised Flagstar that those were exempt retirement funds.

A month later, on April 19, 2011, Rice completed his 2010 tax returns. He then negotiated the $95,000 cashier's check. This time he deposited $15,000 into his Comerica account, paid his taxes of $17,280, and purchased another cashier's check in the amount of $80,000.

On April 20, 2011, at the meeting of creditors, Rice disclosed for the first time the existence of the cashier's check.

On May 5, 2011, Rice filed his amendments to schedules. On his amended Schedule B, Rice disclosed the cashier's check in the amount of $95,000. He also disclosed the garnished retirement funds held by Michigan First Credit Union in the amount of $18,807.08. On his amended schedule C, Rice claimed these items exempt pursuant to § 522(d)(12).

The trustee argues the debtor either intentionally or recklessly concealed the property at issue and he therefore should not be permitted to exempt it. The trustee further asserts that the funds are not exempt under § 522(d)(12) because they were not held in a tax exempt account.

II.

Fed. R. Bankr. P. 1009 states, in relevant part, "[a] voluntary petition, list, schedule, or statement may be amended by the debtor as a matter of course at any time before the case is closed."

2

In the Sixth Circuit, a debtor may amend his or her petition and schedules at any time before the case is closed, provided there is no bad faith or concealment of property. *Lucius v. McLemore*, 741 F.2d 125, 127 (6th Cir. 1984). "In the context of an amendment to exemptions, bad faith is determined by an examination of the totality of the circumstances. Mere allegations of bad faith will not suffice; the objecting party must demonstrate the bad faith of the debtor by specific evidence." *In re Colvin*, 288 B.R. 477, 481–82 (Bankr. E.D. Mich. 2003) (citations omitted).

In *In re O'Brien*, 443 B.R. 117 (Bankr. W.D. Mich. 2011), the debtor sought to amend his schedules to add a tax refund which he also sought to exempt. The court stated:

> When a debtor amends his schedules to add a tax refund: "The crucial question . . . becomes whether the debtor's nondisclosure of the tax refund was in bad faith or fraudulent." *In re Millsaps*, 774 F.2d 1163, 1985 WL 13737, at *1 (6th Cir . 1985) (unpublished table opinion). It is up to the bankruptcy court, as the finder of fact, "to determine credibility and whether there was intent to conceal." *Id*. "In the context of an amendment to exemptions, bad faith is determined by an examination of the totality of the circumstances." *Moyer v. Hollinshead* (*In re Hollinshead*), 438 B.R. 354, 2010 WL 727969, at *3 (6th Cir. BAP 2010) (unpublished table opinion) (quoting *In re Colvin*, 288 B.R. 477, 481–82 (Bankr. E.D. Mich. 2003) (citations omitted)).

*Id*. at 141.

The court continued:

> When examining whether a nondisclosure of a tax refund is intentional or not, this court agrees that "[i]nadvertence, neglect and carelessness is somewhat common in the preparation of initial bankruptcy papers, perhaps too common." *In re Colvin*, 288 B.R. at 483. When a debtor alleges a failure to disclose was inadvertent, a court must assess all circumstances to determine whether the assertion is well-grounded or whether intentional concealment occurred. *Id*. at 482. When a court finds that a failure to disclose a tax refund was "intentional or at least reckless," a remedy for a debtor "evad[ing] the law and cheat[ing] creditors" is to sanction that debtor by denying the amended exemption. *Id*. at 483–84. Also,

3

> "from a legal perspective, reliance on the advice of counsel can save a debtor from the consequences of failing to disclose assets only when that reliance is reasonable and in good faith." *Id.* at 483 (emphasis supplied) (citations omitted). Also, "[d]ebtors cannot be permitted to exempt property by self-help." *Id*.

*Id.* at 141.

A debtor has "a paramount duty to carefully consider all questions included in the Schedules and Statement [of Financial Affairs] and see that each is answered accurately and completely." *In re Colvin*, 288 B.R. at 480 (quoting *Casey v. Kasal* (*In re Kasal*), 217 B.R. 727, 734 (Bankr. E.D. Pa. 1998), *aff'd*, 223 B.R. 879 (E.D. Pa. 1998)). "The burden is on the debtors to complete their schedules accurately." *Rion v. Spivey* (*In re Springer*), 127 B.R. 702, 707 (Bankr. M.D. Fla. 1991). "A debtor is assumed to have read his bankruptcy petition and schedules before signing them under pains and penalties of perjury, and he is responsible for their contents." *Carpenter v. Fanaras* (*In re Fanaras*), 263 B.R. 655, 667 (Bankr. D. Mass. 2001). A "debtor's failure to read the schedules before signing them indicates a complete disregard for the duty of honesty imposed by the Bankruptcy Code." *In re Lundy*, 216 B.R. 609, 611 (Bankr. E.D. Mich. 1998). "A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *Boroff v. Tully* (*In re Tully*), 818 F.2d 106, 111 (1st Cir. 1987). *See also Mosley v. Sims* (*In re Sims*), 148 B.R. 553, 557 (E.D. Ark.1992) (Debtor's assertion that he merely glanced over the petition constituted proof of a "cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor.").

III.

In the present case, Rice contends that he did not intentionally omit the cashier's check and garnished funds from his schedules, but that the omissions were a mistake. Rice asserts that he

4

disclosed the assets to his attorney and assumed they were included in his schedules. (Tr. of July 12, 2011 hrg. at 37.) He further testified that he assumed the schedules were correct. (Tr. at 27.)

In signing his schedules, Rice declared under penalty of perjury that he had read the schedules and that they were true and correct to the best of his knowledge. However, he testified that he did not read all the schedules, but just scanned them. (Tr. at 27, 50-51.) He stated that he depended on his attorney to ascertain the correctness of the schedules. (Tr. at 37.)

Because the debtor failed to read his schedules before signing them, the Court concludes that his contention that the omissions were unintentional is not credible. At the very least, the omissions were reckless and demonstrate an improper disregard of his duty of full disclosure. "[S]tatements made with reckless indifference to the truth are regarded as intentionally false." *Korte v. IRS* (*In re Korte*), 262 B.R. 464, 474 (B.A.P. 8th Cir. 2001).

Accordingly, the trustee's objection to the debtor's amended claims of exemption is sustained.

IV.

Assuming the debtor had not acted in bad faith in failing to disclose these assets, the Court would have, nevertheless, denied the exemptions. The debtor sought to exempt the cashier's check and garnished funds under 11 U.S.C. § 522(d)(12), which permits the debtor to exempt "[r]etirement funds to the extent those funds are in a fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986." 11 U.S.C. § 522(d)(12).

Accordingly, § 522(d)(12) imposes two requirements before a debtor may claim an exemption under that section: (1) the amount the debtor seeks to exempt must be retirement funds;

and (2) the retirement funds must be in an account that is exempt from taxation under one of the provisions of the Internal Revenue Code set forth therein.

When the debtor filed his bankruptcy case, the funds at issue were not in an exempt retirement account. The debtor asserts that pursuant to § 522(b)(4)(C), they nevertheless retained their exempt status. That section provides, in pertinent part:

> A direct transfer of retirement funds from 1 fund or account that is exempt from taxation under section 401, 403, 408, 408A, 414, 457, or 501(a) of the Internal Revenue Code of 1986, . . . shall not cease to qualify for exemption under paragraph (3)(C) or subsection (d)(12) by reason of such direct transfer.

11 U.S.C. § 522 (b)(4)(C).

This section has been applied in situations where a debtor inherits a retirement account and the funds are directly transferred to the debtor's own retirement account. *See Doeling v. Nessa* (*In re Nessa*), 426 B.R. 312 (B.A.P. 8th Cir. 2010); *In re Cutignola*, __ B.R. __, 2011 WL 1886182 (Bankr. S.D.N.Y. 2011); *In re Johnson*, __ B.R. __, 2011 WL 1674928 (Bankr. W.D. Wash. 2011). These cases hold that a direct trustee-to-trustee transfer of exempt funds does not negate the debtor's ability to claim such funds as exempt under § 522(d)(12).

Here, there was simply no direct transfer from one qualified account to another. Therefore, § 522(b)(4)(C) does not apply and the funds are not exempt under § 522(d)(12).

6

Accordingly, the trustee's objection is sustained.

For Publication

**Signed on August 02, 2011**

                                               /s/ Steven Rhodes
                                             **Steven Rhodes**
                                             **United States Bankruptcy Judge**